FILED
13th JUDICIAL DISTRICT COURT
Sandoval County
7/25/2022 2:01 PM
AUDREY GARCIA
CLERK OF THE COURT
Jennifer R Guzman

THIRTEENTH JUDICIAL DISTRICT COURT
COUNTY OF SANDOVAL
STATE OF NEW MEXICO

**EXHIBIT C**

STATE OF NEW MEXICO,

Plaintiff,

v                                                    CR 1329-CR-2021-00127

RICHARD CRESAP,

Defendant.

## SENTENCING MEMORANDUM

**COMES NOW**, the Defendant Richard Cresap, by and through his attorney of record, Liane E. Kerr and Kelly A. Golightley, and files this Sentencing Memorandum in order to more fully assist the Court in sentencing. Concurrent with this Sentencing Memorandum, Defendant also provides attachments in support of same, to support a sentence that is rationally related to the Defendant's situation.

## FACTS

A. **Procedural Facts**

Richard Cresap comes before this Court for sentencing on a change of plea, wherein on April 27, 2022, he changed his plea from Not Guilty to charges of First Degree murder to Guilty on charges of second degree homicide, with an agreed upon sentencing range of between 10-15 years. Richard was arrested after contacting law enforcement on March 27, 2021 and has remained in custody since that date.

The homicide occurred March 10, 2021 and Richard turned himself into law enforcement on March 25, 2022. Although pretrial services recommended release on recognizance, the Court

1

declined to enter a finding that Richard was not dangerous, because of the charges and he was detained following a detention hearing before Judge Perez which was held on April 6, 2021.

A friend, Alexander Jackson, stayed with Richard's mother and sister for a period, during which time Richard learned that Alexander was having sexual relations with both his sister and his mother. Richard asked his girlfriend, Jazmin, to drive him to his mother's residence in Rio Rancho, where he confronted Alexander. Jazmin subsequently told Law Enforcement that they kept a firearm for protection in the door of their car, but that she never saw Richard remove the gun.

The two friends walked along a path outside Richard's mother's home and toward the golf course. Alexander was known to carry a firearm and according to Richard, when the two argued, Alexander pulled a firearm from his wasteband and pointed it at Richard. Reacting, Richard fired his weapon, and ran. He did not realize that Alexander was actually carrying a bb gun, although based on his comments, Richard's mother, Rachel, and Richard's mother and sister both also believed Alexander carried a firearm. This belief was based upon Alexander's claims, FACEBOOK posts and other gossip by young persons.

Richard was aware that a jury might find him guilty due to the fact that he did acknowledge having a firearm and taking it with him to the scene. There was no immediate threat to his mother or sister when he met with Alexander. Rather than face the chance that he might be convicted of premeditated murder, he elected to plead guilty to the lesser included charge and argue for the low end of the sentencing range of 10 years.

**B.     Social Factors for Consideration**

Richard's father was in and out of prison for most of Richard's life. His mother was married to various men during Richard's life and he suffered abuse at their hands, without having the

protection of his mother, who suffered from drug addiction. Richard's mother abused him and engaged in substance abuse during Richard's formative years. He suffered from medical problems, educational dysfunction, and claims his childhood was unhappy. Richard performed poorly in school and self-medicated with alcohol and drugs in order to cope.

Richard reports that he is depressed, has been diagnosed with a bipolar disorder, ADHD and anxiety. He self-medicated daily with marijuana, and routinely took sedatives, oxycontin, cocaine, morphine/heroin, meth and LSD in order to escape the pain. He recognizes that his reliance on alcohol and drugs has contributed to his addictions. Richard has overdosed and has lived a difficult, violent childhood. He has been stabbed and suffers from heart tremors.

While in custody, he has completed his GED studies and has started college coursework. He takes sedatives, aspirin and allowable antidepressants while in custody. In spite of his difficult background, Richard is always pleasant and polite. During phone interactions with him, he always responds to Undersigned and her staff with "yes, ma'am"; thanks us for our time and asks us to have a nice day. Richard is not a violent criminal, in spite of the crime to which he admitted.

## ARGUMENT

**THE VICTIM WAS KNOWN TO CARRY FIREARMS AND WEAPONS AND POSTED PICTURES OF HIMSELF ON SOCIAL MEDIA. IT IS REASONABLE TO ASSUME THAT RICHARD ARMED HIMSELF PRIOR TO CONFRONTING THE VICTIM ABOUT HAVING SEX WITH RICHARD'S MOM AND SISTER.**

The victim bragged about owning and using firearms. He was a young person with no direction in life and who was trying to grow up too soon. He lived with Richard's family from time to time and bragged about being intimate with both Richard's mother and his sister (both of whom declined to be interviewed due to embarrassment). Pictures of the victim, photos taken directly from

3

his social media site, are attached to this memorandum and referenced in their entirety as "A".

Richard is aware that the victim did not fire first, but when he pulled what turned out to be a bb gun, Richard reacted and fired, killing his friend. He does not make excuses for his actions and he realizes that his reaction was not one of self-defense per se—but he believes it helps put his actions into perspective.

**RICHARD CRESAP IS A GOOD CANDIDATE FOR A REHABILITATIVE PROGRAMS.**

A trial court is reviewed for an abuse of discretion with regard to sentencing issues. *State v. Cawley*, 110 N.M. 705, 712, 799 P.2d 574, 581 (1990). In order to preserve the issue for appellate review, the defendant must raise the issue that the sentence is disproportionate or otherwise not in accordance with the law. *State v. Augustus*, 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct. App.), *cert. denied*, 97 N.M. 621, 642 P.2d 607 (1981). The Defendant, Richard Cresap, submits that the appropriate sentence in this case would be to sentence him to the low end of the recommended sentence, recommend the RDAP program, including a drug treatment facility so that he can continue to afford himself of the programs available in New Mexico and so that he can continue to rehabilitate himself from the childhood he endured.

Richard Cresap is 19 years old and has been in the State's custody for over a year without being adjudicated and sentenced. Mr. Cresap requests a referral to the RDAP program so that he could deal with his reliance on drugs; however, the State was in disagreement prior to adjudication and argued that because of his addictions, he should receive jail time.

According to a report by the Commission on Safety and Abuse in America's Prisons, lack of rehabilitation is making inmates more dangerous. The Commission has urged renewed emphasis on rehabilitation, something which was devalued in the 1970s, due to promotion of "get-tough-on-

4

crime" politics.    The commission, co-chaired by former federal Appeals Court Judge John J. Gibbons[1] and Nicholas Katzenbach[2], heard from criminologists, psychologist, corrections professionals and community advocates warning about dangers associated with warehousing inmates. "Few conditions compromise the safety and security of a correctional institution more than idle prisoners", the commission concluded.

Additionally, the commission opined that the old pessimism about rehabilitation was misguided, relying upon recent research to report that programs that held prisoners understand the motivations underlying their actions and the consequences of their behavior can reduce misconduct and lower recidivism rates by at least 10 percent.    This study supports that any rehabilitative measures taken to help the offender understand the reasons for his/her actions will result in a positive outcome.

Without drug treatment, probationers are nearly twice as likely to recidivate. Only 68% of identified individuals were remanded to drug treatment programs, and of these only 26% successfully completed the programs.  In evaluating probationers, a recidivism rate of 36% compared to 74% for nonparticipants was seen. Fifteen percent of successful DTP participants were rearrested and charged with felonies compared with 56% for non-participants. See Quitting Drugs, Quitting Crime: Reducing Probationer's Recidivism Through Drug Treatment Programs, National Institute of Corrections, 1999.

---

[1]    The attorney who successfully argued in the Supreme Court that detainees at Guantanamo Bay, Cuba, should have access to U.S. courts.

[2]    The U.S. Attorney General during the Johnson administration and Deputy U.S. Attorney General during the Kennedy administration, whose work helped to desegregate the South.

In a study prepared for the White House at its presentation on presenting a drug policy, the author agreed that treatment, rather than incarceration, is key. *See*, <u>Reducing Recidivism Through a Seamless System of Care: Components of Effective Treatment, Supervision and Transition Services in the Community</u>, Faye S. Taxman, PhD (February 20, 1998). Dr. Taxman noted: "...[T]reatment is a viable tool to address the drug consumption and criminal behavior habits of offenders. The studies...show that offenders participating in drug treatment services are less likely to be re-arrested or return to jail/prison than similar offenders who are not participating in drug treatment services."

The length and location of a sentence is purely a matter of legislative prerogative *unless the statutory sentence is disproportionate to the criminal offense involved*. *State v. Garcia*, 100 N.M. 120, 666 P.2d 1267 (1983)(emphasis added); *See also State v. Archebeque*, 95 N.M. 411, 622 P.2d 1031 (1983); *State v. Baros*, 78 N.M. 623, 435 P.2d 1005 (1968). This case presents such a disproportionality in sentencing, given that Richard Cresap is not a violent felon, but rather, a young man who, in spite of his mistreatment during his childhood, sought to protect his mom and sister. It should also be noted that Richard Cresap agreed to enter into a plea and disposition agreement and save the State considerable time and finances in doing so.

Accordingly, this Court should not only look to the elements of the statute, but should look to Richard Cresap's character subsequent to this incident. Richard has attended classes while in custody and maintains a good demeanor. He is an individual who actually desires intervention.

Letters in support are attached to this Memorandum and labeled as "B".

**WHEREFOR**, for the foregoing reasons, the Defendant, Richard Cresap respectfully requests this Court sentence him to RDAP or some other drug rehabilitation program as part of his

sentence; requests this Court sentence him to the low end of the agreed-upon sentence and requests

such further relief as is necessary in the premises.

Respectfully submitted,

LIANE E. KERR, Esq.
PO Box 10491
Albuquerque, New Mexico 87184
(505) 848-9190

I hereby certify that I did file a true and correct copy
of the foregoing to the ADA on the 26th of July 2022.

LIANE E. KERR, Esq.

7