**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DENNIS MURPHY, as Personal
Representative of the Estate of
ALEXANDER JAMES JACKSON,

Plaintiff,

vs. Case No. 26-cv-000757-KWR-SCY

ESURANCE PROPERTY AND
CASUALTY COMPANY,

Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE AND GRANTING PLAINTIFF'S RULE 56(d) REQUEST**

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment (Doc. 27). Defendant argues that it is entitled to judgment as a matter of law as to Plaintiff's claims arising around his underinsured/uninsured motorist ("UM/UIM") coverage because it contends that the uninsured vehicle's involvement in the underlying homicide here cannot occasion UM/UIM coverage. Mot. Summ. J. at 1. Alternatively, Defendant argues that even if the incident alleged here triggered Plaintiff's UM/UIM coverage, it is still entitled to summary judgment "because any UIM limits are fully offset, leaving no available coverage." *Id.*

Conversely, Plaintiff rejects that the incident cannot furnish the necessary grounds to prompt UM/UIM coverage. Resp. Opp. Mot. Summ. J. at 10–13. Additionally, Plaintiff claims that "there are disputed issues of material facts" as to the actual amount of UM/UIM coverage. *Id.* at 1. Plaintiff asserts that discovery is necessary before the Court may resolve Defendant's Motion.

*Id.* Accordingly, Plaintiff requests discovery under Rule 56(d), and attaches an affidavit in support. *Id.* at 6–7, 18–19.

Having reviewed both parties' briefing and the applicable law, the Court defers deciding Defendant's Motion, which is therefore **DENIED without prejudice**. Plaintiff's Rule 56(d) request is **GRANTED**.

## BACKGROUND

This case arises out of Plaintiff's, acting as Personal Representative of the Estate of Alexander James Jackson ("Mr. Jackson"), claims against Defendant based on nonpayment of UM/UIM coverage. *See generally* First Am. Compl., Doc. 22. On October 12, 2018, Abigail Jackson ("Ms. Jackson") purchased an automobile insurance policy from Defendant, Policy No. PANM-007854931. Mot. ¶ 1; Resp. ¶ 1. "The policy covered a vehicle with liability limits of $250,000 per person/$500,000 per accident and UM/UIM limits of $250,00 per person/$500,000 per accident." Mot. ¶ 1; Resp. ¶ 1. Defendant provided a declarations page that reflected the stated coverage amounts and an annual premium of $1,097. Mot. ¶ 2; Resp. ¶ 2.

On October 13, 2018, Defendant "issued an amended declaration page with identical coverages; the only change was an increased premium to $1,144.00 due to higher comprehensive and collision premiums." Mot. ¶ 2; Resp. ¶ 2. Plaintiff states that Ms. Jackson is unsure why the premium increased. Resp. ¶ 2. Defendant states that, on January 4, 2019, Ms. Jackson added a second vehicle and reduced her liability limits from $250,000 per person/$500,000 per accident to $25,000 per person/$50,000 per accident. Mot. ¶ 3. Additionally, Defendant states that Ms. Jackson elected non-stacked UM/UIM coverage with the same limits, and that these amended

coverage limits were renewed and in effect at the time of the underlying incident. *Id.* Plaintiff denies these allegations. Resp. ¶ 3. Mr. Jackson was Ms. Jackson's son. Mot. ¶ 4; Resp. ¶ 4.[1]

Defendant's version of events as to the underlying incident follows. Jazmin Root ("Root") drove Richard Cresap ("Cresap"), in her Chevrolet Cavalier, to his mother's residence at 3369 Marino Drive SE in Rio Rancho, where Mr. Jackson was present. Mot. ¶¶ 6–7, 16–18. Prior, Cresap discovered Mr. Jackson was having an affair with Cresap's family members, causing the relationship between the two to deteriorate. *Id.* ¶¶ 8–10. Both Cresap and Mr. Jackson were known to carry a firearm. *Id.* ¶¶ 11–12. After dropping off Cresap, Root "drove away and parked in the left-turn bay from Country Club Drive to Titleist Drive." *Id.* ¶ 20. Cresap and Mr. Jackson walked 0.2 miles together to the enclosed parking lot of an abandoned golf course. *Id.* ¶ 22. "In the parking lot, Mr. Jackson pulled out a BB gun and brandished it like a firearm." *Id.* ¶ 24. Subsequently, Cresap shot and killed Mr. Jackson. *Id.* ¶ 25. "Multiple witnesses saw Cresap either walk or run about 0.1 miles (approximately 150 meters) to where Root was parked" and enter Root's vehicle. *Id.* ¶¶ 26–27. Root proceeded to drive away from the scene with Cresap in her vehicle. *Id.* ¶ 28.

Plaintiff's account, set out in the First Amended Complaint, alleges the following. Root notified Cresap that Mr. Jackson was at the residence, knowing that Cresap was angry with Mr. Jackson and usually carried a handgun. Am. Compl. ¶ 7. At Cresap's request, Root drove Cresap to the residence, where Cresap exited and "lured [Mr.] [Jackson] out of the residence." *Id.* Root then drove to the abandoned golf course parking lot, turned around, and parked nearby in a left-

---

[1] Plaintiff objects to the exhibit upon which this purported fact, and several others, rests in Defendant's summary judgment record, not to the fact itself. Resp. ¶ 4 ("An unsworn police investigation report is not appropriate evidence to support a motion for summary judgment under Fed. R. Civ. P. 56(c)(1)(A)."). The Court does not presently express a view on the admissibility of any of Plaintiff or Defendant's exhibits, and reserves such a ruling for later disposition.

turn bay, where she waited "positioned to make a quick getaway." *Id.* Cresap and Mr. Jackson "walked to the abandoned golf course," where Cresap shot Mr. Jackson eleven times, then ran to Root's vehicle, and the two drove away. *Id.* Plaintiff further alleges that police recovered a casing from the murder weapon in Root's vehicle and that Root provided investigators with the weapon's gun case. *Id.* ¶¶ 8, 12.

Both Plaintiff and Defendant agree that Root owned and operated the Chevrolet Cavalier. Mot ¶ 17; Resp. ¶ 17. Additionally, the parties both agree that "Root was insured under a minimum-limits policy" at the time of the shooting. Mot. ¶ 29; Resp. ¶ 29. Finally, both parties agree that Mr. "Jackson brought a claim for damages against Root, which settled for policy limits of $25,000."[2] Mot. ¶ 30; Resp. ¶ 30. The record remains unsettled and incomplete as to other specifics of the incident.

Plaintiff's First Amended Complaint, filed May 13, 2026, asserts six counts: (1) declaratory judgment, (2) breach of contract, (3) insurance bad faith and breach of fiduciary duties, (4) unfair insurance claims practices under New Mexico state law, (5) unfair trade practices under New Mexico state law, and (6) breach of good faith and fair dealing. Am. Compl. ¶¶ 20–64.

On June 24, 2026, before the start of discovery, Defendant moved for summary judgment. *See generally* Mot.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

---

[2] The Court takes this to mean that Ms. Jackson settled with Root's insurance for $25,000.

motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771-72 (10th Cir. 1988) (internal citation omitted).

A nonmovant can request that the Court delay considering a motion for summary judgment and allow time for further discovery if "[the nonmovant] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Rule 56(d) of the Federal Rules of Civil Procedure states:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "A prerequisite to granting relief . . . is an affidavit furnished by the nonmovant." *Committee for First Amendment v. Campbell,* 962 F.2d at 1522 (citing *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 832 (10th Cir. 1986)). "Unless dilatory or lacking in merit," a request under Rule 56(d) "should be liberally treated." *Jensen v. Redevelopment Agency of Sandy City,* 998 F.2d 1550, 1553–54 (10th Cir. 1993) (internal quotation marks and citations omitted). However, "Rule 56([d]) may not be invoked based solely upon the assertion that discovery is incomplete or that the specific facts necessary to oppose summary judgment are unavailable." *Schaefer v. Antill,* No. CIV 06–0460 JB/ACT, 2007 WL 709046, at *9 (D.N.M. Jan.

31, 2007) (unpublished). Indeed, "Rule 56([d]) is not a license for a fishing expedition." *Lewis v. Ft. Collins,* 903 F.2d 752, 759 (10th Cir. 1990).

"In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Guttierez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (internal quotation omitted).

**DISCUSSION**

After Defendant filed a motion for summary judgment, Plaintiff submitted a response and an attached affidavit under Rule 56(d), in which he requests that the Court defer a ruling on Defendant's summary judgment motion so that they may conduct discovery. As explained below, Plaintiff's Rule 56(d) affidavit demonstrates that the requested discovery is essential to justify his opposition to the summary judgment motion. Therefore, the Court will grant Plaintiff's Rule 56(d) request.

The Court's inquiry is confined to the affidavit attached to the motion. Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. . . ."). "A prerequisite to granting relief . . . is an affidavit furnished by the nonmovant." *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992). The affidavit must "explain why facts precluding summary judgment cannot be presented." *Id.* The Tenth Circuit has held that even if a summary judgment response "contains [some of] the information required in Rule 56(d) . . . [,] we may not look beyond the affidavit in considering a Rule 56(d) request." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (refusing to consider plaintiffs' arguments for additional discovery when those arguments were made only in their summary judgment response); *see also Loginov v. Sheridan Mem'l Hosp.*, No.

24-8032, 2025 WL 1904470, at *3 (10th Cir. July 10, 2025) (unpublished) (limiting review to affidavit in Rule 56(d) request).

Here, the two essential issues in resolving Defendant's summary judgment motion are (1) whether UM/UIM coverage applied during the underlying incident and (2) what amount of UM/UIM coverage did Ms. Jackson possess at the time of the underlying incident. The first issue is gating—if UM/UIM coverage did not apply to the underlying incident, then Plaintiff's claims fail. "[A]n uninsured/underinsured motorist (UM/UIM) policy may provide coverage for intentional torts committed by the occupants of an uninsured vehicle when the 'intentional conduct and its resulting harm arises out of the use of [the] uninsured vehicle.'" *Komis v. Farmers Ins. Co.*, 587 P.3d 836, 838 (N.M. Ct. App. 2025) (quoting *Britt v. Phoenix Indem. Ins. Co.*, 907 P.2d 994, 999 (N.M. 1995)).

Courts employ a three-part test to determine whether intentional conduct and its resulting harm arose out of the use of an uninsured vehicle. *Crespin v. Safeco Ins. Co. of Am.*, 429 P.3d 968, 971 (N.M. Ct. App. 2018). Under the three-part test,

> the trier of fact first considers whether there is a sufficient causal nexus between the use of the uninsured vehicle and the resulting harm. The causal nexus requires the vehicle to be an active accessory in causing the injury. Second, if there is a sufficient causal nexus, the trier of fact next considers whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered. Finally, the trier of fact must consider whether the 'use' to which the vehicle was put was a normal use of that vehicle.

*Barncastle v. Am. Nat'l Prop. & Cas. Cos.*, 11 P.3d 1234, 1235 (N.M. Ct. App. 2000) (internal quotation marks and citations omitted). The Tenth Circuit illuminated the first factor in *State Farm Mutual Automobile Insurance Co. v. Blystra,* 86 F.3d 1007, 1012 (10th Cir. 1996), finding that a vehicle is an active accessory when it offers several advantages in the commission of [the] crime that would otherwise be unavailable to [the perpetrator]." These advantages include

(1) unsuspiciously and quickly approaching a victim while hiding a weapon, (2) concealing an assailant's identity during the commission of a crime, and (3) using the vehicle to quickly escape the scene and avoid apprehension. *Id.* As to the second *Britt* factor, an act of independent significance depends on "whether the chain of events resulting in the accident was unbroken by the intervention of any event *unrelated to the use of the vehicle*." *Id.* at 1013 (quoting *Kish v. Central Nat. Ins. Group of Omaha*, 424 N.E.2d 288, 294 (Ohio 1981)) (cited in *Britt*, 907 P.2d at 1000). Finally, the third factor, normal use, is easily found where the vehicle is used for transport. *See Blystra*, 86 F.3d at 1011–12; *see also Britt,* 907 P.2d at 1000 ("transportation would be normal use"). Therefore, these factors are essential to resolving Defendant's summary judgment motion.

First, Plaintiff satisfied the procedural requirement of Rule 56(d) by attaching to his Response to Defendant's summary judgment motion an affidavit by Plaintiff's counsel. *See id.* The affidavit, under Rule 56(d), properly seeks to delay summary judgment until discovery may be conducted to determine "whether the incident falls within the coverage afforded by Defendant's insurance policy" and the amount of Ms. Jackson's insurance coverage at the time of the underlying incident. *See* Resp. Ex. 2. Because the requested discovery weighs on relevant legal questions in resolving Defendant's summary judgment motion, the Court finds Plaintiff's request under Rule 56(d) well taken. *Cf. Martinez v. Lucero*, No. 11-1003, 2012 WL 2175772, at *30 (D.N.M. May 31, 2012) (unpublished) (denying a Rule 56(d) motion where the information sought did not relate to dispositive legal questions).

In relevant part, Plaintiff's affidavit states the following:

> a. No depositions have taken place, and neither Plaintiff nor Defendant has personal knowledge of the facts surrounding the subject incident. Whether the incident falls within the coverage afforded by Defendant's insurance policy is a question of fact for which there is currently no evidence in the record either way.

> b. . . . Whether Ms. Jackson was informed of the changes to her policy coverage and whether she knowingly and intelligently agreed to them are disputed questions of fact.
>
> 3. These additional items of discovery would help establish whether the subject incident fell within the insurance policy's coverage, as well as what level of underinsurance motorist coverage Ms. Jackson contracted for with Defendant
>
> a. Deposition of Jazmin Root, who was involved in the underlying incident;
>
> b. Deposition of other third parties who have personal knowledge of the underlying incident;
>
> c. Deposition of Abigail Jackson, who is the named insured on the insurance policy at issue;
>
> d. Deposition of Defendant's insurance agent who sold this policy to Ms. Jackson;
>
> e. Deposition of Defendant's underwriting employees who adjusted the coverage on this policy;
>
> f. Written discovery from Defendant on how and why Ms. Jackson's automobile insurance policy was changed.

Resp. Ex. 2. The affidavit meets the substantive requirements of Rule 56(d). *See Flor v. Bd. of Regents of Univ. of N.M.*, 539 F. Supp. 3d 1176, 1192 (D.N.M. 2021) ("Rule 56(d)'s substantive requirement—i.e., what facts Plaintiff wants to discover and to what end . . . ."). Core to a Rule 56(d) request, Plaintiff must elaborate the information "essential to the summary judgment opposition" and explain how the specific information is essential. *Equity Bank v. Schneider*, 619 F. Supp. 3d 1082, 1093 (D. Kan. 2022) (quoting *Gutierrez v. Cobos*, 841 F.3d 895, 909 (10th Cir. 2016)). Plaintiff's affidavit outlines two necessary areas of discovery that are essential to the summary judgment opposition and explains how that discovery is essential. First, Plaintiff's affidavit specifically points to the lack of information about the subject incident—the shooting of Mr. Jackson and Root's vehicular involvement—and explains that such information would directly bear on whether UM/UIM coverage applies, an essential element of Plaintiff's

summary judgment opposition. *See* Resp. Ex. 2. It states that a "[d]eposition of Jazmin Root" and a "[d]eposition of other third parties who have personal knowledge of the underlying incident" are relevant discovery inquiries necessary for rebutting Defendant's summary judgment motion. *Id.* Thus, the affidavit contains, at least in broad terms, relevant probable facts as to the underlying incident not yet established. Indeed, discovery as to the underlying incident will furnish the necessary facts to articulate a response to Defendant's denial that the incident satisfies the *Britt* elements, which is dispositive for Plaintiff's claims. *See* Mot. at 7–21.

Second, Plaintiff's affidavit states that discovery as to Abigail Jackon's insurance policy at the time of the incident is essential to Plaintiff's summary judgment opposition, and delineates the specific discovery needed to resolve that question. The affidavit specifically requests depositions of Ms. Jackson, the insurance agent who sold her the insurance policy, and the underwriting employees who adjusted the coverage, as well as written discovery from Defendant on how and why the policy was changed. Resp. Ex. 2. Defendant's alternative argument in its summary judgment motion, that the settlement with Root's insurer fully offsets the available UM/UIM limit, depends on the relevant coverage limits at the time of the incident and the validity of Ms. Jackson's selection of reduced and non-stacked UM/UIM coverage. *See* Mot. 21–26. Both categories of discovery are necessary to respond to Defendant's summary judgment motion because the facts that each yield will determine the response to Defendant's two arguments. *See generally* Mot.

Plaintiff's affidavit also satisfies the remaining requirements of a Rule 56(d) request. The affidavit explains why these facts cannot be presently presented: no depositions have taken place and neither party has personal knowledge of the incident. Resp. Ex. 2. Defendant moved for summary judgment before the parties conducted any discovery, and thus Plaintiff has had no

opportunity to obtain testimony from Root or any other witnesses, or to obtain Defendant's records. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) ("summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."). And the affidavit identifies how additional time will allow Plaintiff to obtain those facts: through the specific depositions and written discovery it enumerates. Resp. Ex. 2.

Finally, to the extent that Plaintiff's affidavit does not strictly adhere to the requirements attendant to a Rule 56(d) request, the Court construes Plaintiff's request liberally. *Jensen,* 998 F.2d at 1553–54. Further, Plaintiff's Rule 56(d) request is neither "dilatory" nor "lacking in merit." *Id.* Plaintiff's affidavit clearly highlights the dispositive discovery necessary for the resolution of this matter and it was timely filed. *See* Resp. Ex. 2. In sum, Plaintiff's affidavit falls squarely within the orbit of the conditions for granting a Rule 56(d) request. Therefore, the Court grants Plaintiff's Rule 56(d) request.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 27) is hereby **DENIED without prejudice** and Plaintiff's Rule 56(d) request is **GRANTED**.

/S/

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE